**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT PIKEVILLE**

**CIVIL ACTION NO. 04-282-DLB**

**FIRST FAMILY FINANCIAL
SERVICES, INC., ET AL.**                                                              **PLAINTIFFS**

**vs.**                                         **OPINION & ORDER**

**WAYLON & JENNIFER MOLLETT**                                      **DEFENDANTS**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Plaintiffs filed the within action seeking to vacate an arbitrator's decision. The case is presently before the Court on Defendants' Motion to Dismiss (Doc. #3) and Plaintiffs' Motion for Summary Judgment (Doc. #5).

## BACKGROUND

This case is but one of three court proceedings between these parties. Defendants, Waylon and Jennifer Mollett (the Molletts) entered into loan transactions with Kentucky Finance Company, Inc.[1] In February of 2003 the Molletts filed suit in the Pike Circuit Court, asserting various state-law claims against these lenders for claimed improper sale of credit insurance in conjunction with the loan transaction. The lenders subsequently removed that action to this Court on the basis of diversity subject matter jurisdiction, being Pikeville

---

[1] The entity originally contracting with the Molletts, Kentucky Finance Company Inc., is no longer in existence based on subsequent mergers involving the named Plaintiffs herein. Kentucky Finance Company, Inc. and Associates Corporation of North America have been merged into and are now known as Associates First Capital Corporation, Inc. (according to Complaint). Given the changes in corporate status of the various successor lenders, for ease of reference, unless otherwise specified the Court refers to the party Plaintiffs collectively as "Lenders."

Division case no. 03-cv-82, *Waylon and Jennifer Mollett v. Kentucky Finance Company Inc., et al.*

Accompanying and incorporated by reference in the Disclosure Statement, Note and Security Agreement supplied by Kentucky Finance and executed by the Molletts was a separate document labeled Arbitration Agreement.  Following removal, the lenders sought to compel arbitration of the Molletts' claims pursuant to that Arbitration Agreement, and so dismiss the federal proceeding.  Prior to a ruling on those motions, the parties submitted an Agreed Order voluntarily dismissing the case as being referred to arbitration by agreement.

The parties then participated in arbitration through the American Arbitration Association.  Briefs were submitted prior to the arbitration hearing.  The Molletts' brief challenged the Lenders' sale to them of credit life and homeowners' insurance under state statutory and common law theories, including negligence and fraud.  Although not asserted in their initial state court complaint, their arbitration brief also alleged the Lenders' practice violated the federal Truth-in-Lending Act (TILA) by not making required disclosures regarding credit insurance.

On June 3, 2004, the arbitrator issued an interim award.  It included the finding that "Kentucky Finance Company during the time frame involved in this arbitration was clearly negligent and/or fraudulent in its sales tactics."  The arbitrator awarded the Molletts $5,316.45 as "compensatory and punitive damages" and $3,666.64 as arbitrator's fees.  The arbitrator also stated he intended to award attorney fees, with the amount to be determined based upon subsequent submission.  The final award, entered July 13, 2004, awarded attorneys' fees in the amount of $15,561.42 to the Molletts.

On August 10, 2004, the Lenders filed the present action seeking to vacate only that portion of the arbitrator's award assessing attorneys' fees. On August 19, 2004, the Molletts filed a separate action in the Pike Circuit Court seeking to enforce the arbitrator's final award. Shortly thereafter, the Molletts moved to dismiss the within federal court action filed by the Lenders based upon lack of subject matter jurisdiction.

The Lenders responded on two fronts. First, they filed a Notice of Removal of the Molletts' state court action to confirm the award, being *Waylon and Jennifer Mollett v. Kentucky Finance Company, Inc., et al.,* Pikeville Division case no. 04-cv-332.[2] The Lenders also filed a Response to the Molletts' Motion to Dismiss, contending subject matter jurisdiction does exist. That Response was also combined with a Motion for Summary Judgment to vacate the arbitrator's award of attorneys' fees as a matter of law.

## DISCUSSION

In support of their Motion to Dismiss, the Molletts maintain this Court lacks subject matter jurisdiction over the Lenders' petition to vacate and that the petition fails to state a claim against them upon which relief may be granted. Fed. R. Civ. P. 12(b)(1) & (6). Conversely, the Lenders submit the Court has jurisdiction and move for a summary judgment in their favor vacating that portion of the award directed to legal fees. As this Court's authority to adjudicate the petition rests upon having valid subject matter jurisdiction, this issue must be addressed first.

---

[2]The Molletts have moved to remand this related action back to state court, also for lack of subject matter jurisdiction. That motion and that other proceeding are addressed by separate Memorandum Order entered concurrently with this Opinion and Order.

3

### A. Diversity Subject Matter Jurisdiction

In their Motion to Dismiss, the Molletts submit that the requisite amount in controversy for diversity subject matter jurisdiction is lacking. In order for diversity jurisdiction to lie, the amount in controversy must be in excess of $75,000. *See* 28. U.S.C. § 1332. A claim involving less than the statutory minimum fails to give rise to diversity jurisdiction. *Gafford v. General Electric Co.*, 997 F.2d 150, 157 (6th Cir. 1993). The amount in controversy is determined from looking at the complaint itself. In an action to vacate an arbitration award, the amount in controversy is the amount of the arbitration award. *See Ford v. Hamilton Investments, Inc.*, 29 F.3d 255, 260 (6th Cir. 1994) (court held that a claim to vacate an award less than the statutory minimum was insufficient for diversity jurisdiction).

In this case, it is clear that the necessary amount in controversy for diversity jurisdiction is lacking. The total awarded in the arbitration proceedings was $24,543.87, which is less than the statutory requirement. The Lenders do not protest that this Court is without jurisdiction to hear this case based upon diversity. Therefore, subject matter jurisdiction arises, if at all, based upon a federal question.

### B. Federal Question Subject Matter Jurisdiction

It is well-settled that the Federal Arbitration Act (FAA) does not confer subject matter jurisdiction on the federal courts even though it creates federal substantive law. *Hamilton Investments*, 29 F.3d at 257. So, for example, while the statute provides various reasons upon which to seek vacation of an arbitration award, 28 U.S.C. § 10, these reasons do not alone provide a federal district court with subject matter jurisdiction. Rather, an independent basis for jurisdiction "must be disclosed upon the face of the complaint,

4

unaided by the answer." *Phillips Petroleum Co. v. Texaco, Inc.,* 415 U.S. 125, 127-28 (1974). The Molletts' Motion to Dismiss protests that the Lenders have not stated an issue of federal law on the face of a well-pleaded complaint, which is required to confer federal question jurisdiction.

### 1. *Reference to a federal law fails to raise a substantial federal question*

Sixth Circuit law provides that mere recital or reference to a federal statute cannot confer federal jurisdiction over an action to confirm or vacate an arbitration award. In *Ford v. Hamilton Investments*, the Sixth Circuit held that mere reference to an arbitration award being based upon the federal Securities Act of 1934 was insufficient to confer federal question jurisdiction under the FAA over an action to vacate that award. *Hamilton Investments,* 29 F.3d at 259. As that court explained, the dispute must involve a substantial question of federal law in order to provide federal jurisdiction. *Id.* at 258. The court found that the recital of a federal statute did not involve a substantial question of federal law providing federal subject matter jurisdiction over a petition to vacate. *Id.* at 259. Ultimately the court remanded the action for failure of subject matter jurisdiction, an issue raised *sua sponte* and even though both sides agreed there was federal question jurisdiction.

Though it appears the actual claims submitted to arbitration in the *Hamilton Investments* case were based upon state law alone, the court suggested in a footnote that even had a claim for violation of federal securities laws been presented at arbitration, this, too, may have been insufficient to confer jurisdiction to vacate the arbitration award. *Id.* n.5. This footnoted suggestion was later adopted by this Circuit's decision in *Collins v. Blue Cross Blue Shield of Michigan,* 103 F.3d 35 (6th Cir. 1996).

5

> First, the FAA does not independently confer federal jurisdiction . . . . Second, 'the federal nature of the claims submitted to arbitration would not appear to be a sufficient basis for jurisdiction under 28 U.S.C. § 1331, since the rights asserted here are actually based on the contract to arbitrate rather than on the underlying substantive claims.'

*Collins,* 103 F.3d at 37 (quoting *City of Detroit Pension Fund v. Prudential Securities, Inc.,* 91 F.3d 26, 29 (6th Cir. 1996)).  In *Collins,* among those claims presented in the underlying arbitration was a statutory claim under the ADA.  But even the federal nature of that "underlying arbitrated claim [could not] provide an independent basis of federal jurisdiction in an action to confirm or vacate an arbitration award."  *Id.* at 38.  Thus, based upon the Sixth Circuit's reasoning in *Hamilton Investments* and *Collins*, the fact that TILA was one of the claims in the underlying arbitration here does not provide a substantial federal question that would serve as an independent basis for subject matter jurisdiction.

    *2.    Reference to "manifest disregard" of a federal law as providing a substantial federal question*

Lenders' argument here goes a step further.  They submit that they rely not upon TILA itself as providing a jurisdictional basis, but rather that because there was a "manifest disregard" of TILA by the arbitrator, this is sufficient to import federal question jurisdiction.  This means the Lenders look to manifest disregard of law not just as substantive support for vacating the fee award, but also as the basis for jurisdiction in that it is manifest disregard of *federal* law.  The Molletts argue that this alleged manifest disregard of federal law does not, in fact, present a substantial federal question and Plaintiffs have not met the standards of the well-pleaded complaint rule.

The Sixth Circuit has held that although not mentioned in the FAA, an award may be vacated under the Act if the arbitrator exhibits a "manifest disregard" of the law.  *Jacada*

*(Europe), LTD. v. International Marketing Strategies, Inc.,* 401 F.3d 701, 712 (6th Cir. 2005); *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 87 F.3d 844, 850 (6th Cir. 1996); *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros,* 70 F.3d 418, 421 (6th Cir. 1995). That being said, the Sixth Circuit has *not* been presented with the question of whether alleging manifest disregard of federal law in a well-pleaded complaint, standing alone, is sufficient to confer federal question subject matter jurisdiction. Those Sixth Circuit cases in which a "manifest disregard of federal law" argument was raised and addressed each involved another basis for subject matter jurisdiction. *See, e.g., Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Jaros,* 70 F.3d 418, 421 (6th Cir. 1995).

Given that within the Sixth Circuit federal question jurisdiction for an action to confirm or vacate an arbitration award is not shown by the presence of a federal claim in the underlying arbitration, the court is mindful that this standard not be circumvented by allowing a bare allegation of "manifest disregard" of this same federal claim to serve as magic words of jurisdiction. To conclude otherwise would mean a party to any arbitration proceeding that involved a federal claim could simply cry "manifest disregard of the federal law" governing that federal claim to thereby give rise to federal question jurisdiction. Something more must be required for manifest disregard to serve as an independent basis for federal review of an arbitration award if *City of Detroit Pension Fund* and *Collins* are to have any meaning.

In support of their position that allegations of manifest disregard of federal law in a well-pleaded complaint confer federal jurisdiction, Lenders rely heavily upon the Second Circuit's decision in *Greenberg v. Stearns & Co.*, 220 F.3d 22 (2d Cir. 2000). In *Greenberg*

7

the Second Circuit did recognize manifest disregard of federal law as a separate basis for jurisdiction, *id.* at 27, though ultimately found that no manifest disregard had in fact occurred. *Id.* at 28-29. The *Greenberg* court, without citation to authority, found that the examination process itself used for determining if federal law has been manifestly disregarded "so immerses the federal court in questions of federal law and their proper application that federal question subject matter jurisdiction is present." *Id.* at 27. This reasoning seems to allow the examination process used to determine if there is jurisdiction to provide that jurisdiction. In an effort to compensate for allowing essentially a bare assertion to suffice for establishing jurisdiction, the *Greenberg* court offers that this manifest disregard of federal law must be the principal complaint of the petition and be made in good faith. If so, then "a substantial federal question is presented and the federal courts have jurisdiction to entertain the petition." *Id.*

In this Court's view, something more is required. Finding in such conclusory analytical fashion that jurisdiction exists makes short shrift of the necessity to establish that a substantial federal question is presented, potentially allowing a mere incantation or recital of manifest disregard to suffice. In *Carter v. Health Net of California, Inc.,* 374 F.3d 830 (9th Cir. 2004), a case also relied upon by Lenders, the Ninth Circuit referred to the standard enunciated in *Greenberg, id.* at 836, while also examining more closely the factual and legal basis for manifest disregard to see if in fact a substantial federal question had been presented. That appellate court concluded a substantial federal question had not been presented, and that the district court's decision would be vacated with the matter remanded to state court for lack of subject matter jurisdiction. *Id.* at 838-39. This review process is more consistent with this Circuit's consideration of Civil Rule 12(b)(1) motions:

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134 (6th Cir. 1996)(quoting *Mortensen v. First Federal Savings & Loan Ass'n,* 549 F.2d 884, 890 (3d Cir. 1977)).

### 3. The Lenders' allegation of "manifest disregard" of the federal law of TILA fails to raise a substantial federal question

#### (a) Legal Standard

The standard for vacating an arbitrator's award based on manifest disregard of the law is a stringent one. Review for manifest disregard of the law is a very limited form of review, *Merrill Lynch,* 70 F.3d at 421, with a highly deferential standard. *Jacada (Europe), LTD.,* 401 F.3d at 713. "[T]he review is very narrow; one of the narrowest standards of judicial review in all of American jurisprudence." *Nationwide Mut. Ins. Co. v. Home Ins. Co.,* 429 F.3d 640, 643 (6th Cir. 2005). The award "must fly in the face of clearly established legal precedent." *Merrill Lynch,* 70 F.3d at 421. Manifest disregard of the law is shown where "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." *Jacada,* 401 F.3d at 713; *see also Dawahare*, 210 F.3d at 669.

Furthermore, arbitrators are not required to explain their decisions. *Id.* at 669. When arbitrators do not state the grounds for their decisions, "it is all but impossible to determine whether they acted with manifest disregard for the law." *Id.*

9

> [T]he error under review must be obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.

*M & C Corp.,* 87 F.3d at 851. When an arbitrator's bases for decision are not articulated, an error within that decision "obvious and capable of being readily and instantly perceived by the average person" is not likely. In Judge Martin's concurrence in *Federated Department Stores, Inc. v. J.V.B. Industries, Inc.,* he notes that where the arbitrator's basis for the award is not stated, courts are required to engage in a "judicial snipe hunt" that requires the court to listen to the parties argue about law that may or may not have been disregarded. *Federated Department Stores,* 894 F.2d 862, 871 (6th Cir. 1990)(J. Martin, concurring).

In *Dawahare*, the Sixth Circuit was confronted with an arbitrator's award that was a mere three-and-a-half pages long. *Dawahare*, 210 F.3d at 670. The award did not give a detailed explanation as to why the damages were awarded. None of the parties had clearly stated the law to the arbitrator, and accordingly, the Sixth Circuit did not find that the arbitrator ignored any clearly established law. *Id.* It was possible that the arbitrator did misapply the law in the case, *id*., but more than misinterpretation or misapplication is needed, *id*. at 671. Thus, because the evidence presented did not require a particular outcome, the court rejected appellant's contention that a more extensive review of the award be conducted. *Id.* at 671.

*Merrill Lynch* is factually similar to the case at bar. Appellant sought to vacate an award because it allegedly exhibited a manifest disregard of the law. *Merrill Lynch,* 70 F.3d

at 420. The trial court had confirmed the arbitrator's award. *Id.* Before the Sixth Circuit, however, appellant contended the statute of limitations for the cause of action had passed before the filing of the claim and that the arbitrator disregarded this clear principle of law. *Id*. at 421. The circuit court found that even misapplication of the statute of limitations did not constitute manifest disregard. In addition, grounds for the award were not explicit, and appellee had asserted several state law claims that could have plausibly supported the arbitration award. "[O]nly where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside." *Id.* If the court can find any line of argument that is legally plausible and supports the award, the award should be confirmed. *Id.*

### (b) The Lenders' allegations of manifest disregard of federal law

Turning to the Lenders' contentions here, their Complaint asserts the arbitrator disregarded TILA's provisions concerning disclosures:

> In particular, Plaintiffs [Lenders] explained that TILA specifically allows parties to avoid liability by making written disclosures. These disclosures are set out in TILA and Regulation Z, the regulations interpreting and giving effect to TILA. Further, TILA has a safe harbor that provides that if an entity complies with Regulation Z and the model disclosures, then it is deemed to be in compliance with TILA.
> The Plaintiffs [Lenders] fully complied with TILA, the supporting regulations, and the model forms in the regulations.

(Doc. #1, pp. 4,¶¶ 23-24; *See also* ¶ 36( a)-(d)). Additionally, the Lenders assert the following with regard to TILA's one-year statute of limitations:

> In addition, Defendants' [Molletts'] claims were barred by the one year statute of limitations applicable to TILA claims. Under relevant law, the date of the violation is deemed to be the date the transactions were consummated. The transactions were consummated on March 20, 2000 and December 15, 2000. Thus, both transactions were consummated more than one year before the Defendants filed their lawsuit in 2002.

(Id. at ¶ 25; *See also* ¶ 36(f)).  Finally, the Lenders allege in their complaint that attorneys' fees should not have been awarded because the Molletts were not successful on their TILA claims and that in order to be awarded attorneys' fees, TILA requires "success on the merits." (*Id.* at ¶¶ 33, 36(i)).

### (c)  Application of the legal standard to the Lenders' allegations

Just as in *Dawahare*, the arbitrator's award does not specify why the attorneys' fees were awarded.  The arbitrator did not state in either the interim or final award documents upon what basis the attorneys' fees were awarded, TILA or otherwise.  In fact, neither the interim nor final award, a combined total of three pages in length, identify TILA by name.  As the Lenders state in their Complaint, "The arbitrator did not mention TILA, specifically find a violation of TILA, or issue statutory damages under TILA." (Doc. #1, p. 4, ¶ 29).  The arbitration agreement prepared by the Lenders contemplated a circumstance such as the arbitrator's decision here.

> ARBITRATION: Arbitration is a method of resolving disputes between parties without filing a lawsuit in court.  By signing this agreement, you and we are both agreeing that if there are any disputes between you and us, either you or we may require that such dispute be submitted to an arbitrator in accordance with this agreement.  If either party demands arbitration, *the arbitrator's decision will be final and binding on you and us.  <u>The arbitrator does not have to give any written reasons for the decision.</u>*
>
> . . . .
>
> ENFORCEMENT OF ARBITRATION DECISION: After the arbitrator has made a decision, either you or we may take any legal action, including filing a lawsuit, to *enforce* the arbitrator's decision in any federal or state court that has jurisdiction.

(emphasis added).  Thus, this case presents an arbitrator's award that does not contain legal reasoning. This lack of rationale puts this Court in the impossible position of trying to

12

decide what claim -- TILA, one of the Molletts' state statutory or common law claims, or the parties' arbitration agreement, served as the basis of the award.³ This case is exactly the type of "judicial snipe hunt" toward which disfavor has been expressed.

Further, even assuming *arguendo* that TILA was the basis of the claim, it is still not clear that there was manifest disregard of the law. As was stated above, manifest disregard of the law requires the following: (1) the relevant law must be clearly defined and not subject to debate; and, (2) the arbitrator must have consciously chosen to ignore it. *Dawahare*, 210 F.3d at 669 (citing *M & C Corp.,* 87 F.3d at 851 n.3). In actuality Lenders here, as evidence of a well-pleaded complaint that manifest disregard of federal law

---

³The arbitration agreement refers to legal fees. The "COSTS OF ARBITRATION" section of the agreement includes the statement "There may be other costs during the arbitration, *such as attorney's fees,* expenses of travel to the arbitration, and the costs of the arbitration hearings. The Commercial Arbitration Rules determine who will *pay* those fees." (emphasis added). The Commercial Arbitration Rules, in turn, state that:

R-43. Scope of Award
(a) The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable *and within the scope of the agreement of the parties,* including, but not limited to, specific performance of a contract.
. . . .
(d) The award of the arbitrator(s) may include:
   (i) interest at such rate and from such date as the arbitrator(s) may deem appropriate; and
   (ii) an award of attorneys' fees if all parties have requested such an award or it is authorized by law *or their arbitration agreement.*

(emphasis added). The arbitrator's interim award explains his intention to award legal fees as follows:

3. The Arbitrator believes attorney fees should be awarded to counsel for the Claimants for the time expended in having the *hearing on arbitration* and the time spent in *preparing the arbitration.*

4. The prevailing attorney should not include time and efforts expended on other cases nor time and expenses which were incurred as a result of opposing this arbitration.

(emphasis added). The arbitrator made it a point to clarify that only the professional time in connection with the arbitration would be awarded, not professional time expended in other arenas. This would appear to be consistent with the costs provision of the parties' contract, which not only identifies legal fees as a cost that may be incurred**,** but that it may be incurred "during the arbitration," consistent with the arbitrator's limiting compensable professional time to that rendered only in connection with the arbitration.

13

occurred, rely upon the same merits arguments they presented to the arbitrator in their arbitration brief.  Their "manifest disregard" argument is that the arbitrator ignored their merits arguments on TILA.  This law is not so "clearly defined" that it is not "subject to debate" between the parties.

Plaintiffs contend that the arbitrator disregarded the applicable statute of limitations for TILA. However, the arbitrator was presented with conflicting theories concerning how the statute of limitations should be interpreted.  The Lenders argued that a TILA action could not lie because the one-year statute of limitations had been exceeded.  Conversely, the Molletts presented before the arbitrator evidence that the statute of limitations was tolled because of a pending class action suit and that the Molletts' claim was timely.  The arbitrator was presented with conflicting theories on the statute of limitations, not a clearly defined legal principle that he ignored.

Similarly, the parties presented conflicting theories about whether the Lenders' disclosure statement was in violation of TILA.  The Lenders contended they complied with the Federal Commission's forms and regulations for disclosure requirements.  Conversely, the Molletts put forth evidence before the arbitrator that use of the model forms and compliance with Regulation Z does not necessarily mean that no TILA violation occurred. Moreover, the Lenders allege fee awards under TILA require there be success on the merits, and the Molletts were unsuccessful.  As noted, though, the arbitrator's decision does not identify and address each claim raised.  The Molletts submit that from the arbitrator's stated finding that they were told the purchase of credit insurance would improve their chances of getting the loan, it can be inferred that a violation of 15 U.S.C.

§ 1605(b) occurred, and that they were therefore successful on the merits. Again, these are legal areas that are not clearly defined and are subject to debate.

The arbitration agreement is a form contract prepared by the Lenders and required to be signed by the Molletts if they desired to do business with them. Lenders sought to compel arbitration pursuant to this contract, and arbitration was conducted. Now before the Court is a decision that does not specify reasons, including reasons for the decision to award fees.

> [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*Nationwide Mutual,* 429 F.3d at 643; *Jacada,* 401 F.3d at 712; *Federated Dep't Stores,* 894 F.2d at 866 (all referring to *United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29 (1987)). Though by its terms the arbitration agreement envisioned the possibility that the arbitrator's decision would lack detail, the drafter now seeks to challenge the realization of this possibility. But despite their efforts to categorize their protests as principally a substantial federal question on whether the arbitrator manifestly disregarded TILA, it is not obvious that TILA was relied upon here, or that TILA's application here is clearly defined and not subject to debate. Instead, the Lenders' protests here principally involve an analysis of the arbitrator's conduct pursuant to the terms of the arbitration agreement itself. The extent to which the federal law of TILA is implicated is not substantial, given the legal standards used for confirming or vacating the subject arbitration award. And to the extent TILA is a part of the decision review process, any claimed error in its application or interpretation by the arbitrator is not obvious and capable of being readily and instantly perceived. Since a substantial federal question has not been stated

by the Lenders, the Court is without subject matter jurisdiction over their Complaint to vacate and it must therefore be dismissed.

## CONCLUSION

Accordingly, for the reasons stated above, **IT IS HEREBY ORDERED** that:

(1) Defendants' Motion to Dismiss (Doc. #3) is hereby **granted,** as this Court lacks subject matter jurisdiction over Plaintiffs' Complaint; and,

(2) Plaintiffs' Motion for Summary Judgment (Doc. #5) is hereby **denied as moot,** in light of the Court's lack of jurisdiction and dismissal of this proceeding.

A judgment in favor of Defendants will be entered contemporaneously herewith.

This 17th day of March, 2006.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\7-04-282-MTD.wpd